**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Leo Davis,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>O. Segura, et al.,<br><br>　　　　　　Defendants. | No. CV 21-00015-TUC-JGZ<br><br>**ORDER** |

Plaintiff John Leo Davis, who is currently confined in the La Palma Correctional Center, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 8.) Pending before the Court are two motions: (1) Defendants Eisel, Hannaford, and Oliver's Motion for [partial] Summary Judgment, which is fully briefed (Docs. 47, 48, 56, 61);[1] and (2) Davis's Motion for Sanctions. (Doc. 71.) For the following reasons, the Court will deny each motion.

**I.   Defendants' Motion for Summary Judgment**

In their Motion for Summary Judgment, Defendants Eisel, Hannaford, and Oliver contend that Davis failed to exhaust his administrative remedies. (Doc. 47.) The Court will deny the Motion because, considering the record in the light most favorable to Davis, an exception to the exhaustion procedures for violations of the Prison Rape Elimination Act (PREA) applied to Davis's initial Formal Grievance. Defendants, however, did not treat

---

[1] The Court provided Davis with notice of the requirements for a response pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc). (Doc. 51.)

the Formal Grievance as implicating PREA and improperly unprocessed it, rendering Davis's remaining administrative remedies effectively unavailable to him.

### A. Background

On screening pursuant to 28 U.S.C. § 1915A(a), the Court concluded that Davis stated six claims: (1) an Eighth Amendment threat-to-safety claim against Defendant Segura (Count One); (2) a Fourth Amendment search-and-seizure claim against Defendants Eisel, Hannaford, and Oliver in their individual and official capacities (Count Three); (3) an Eighth Amendment cruel-and-unusual-punishment claim against Defendants Eisel, Hannaford, and Oliver in their individual and official capacities (Count Five); (4) a state-law battery claim against Defendants Eisel, Hannaford, and Oliver (Count Seven); (5) state-law negligence claims against Defendants Eisel, Hannaford, and Oliver (Count Eight); and (6) a state-law negligence claim against Defendants Gomez and Segura (Count Nine). (Doc. 10.) The Court dismissed the remaining claims and defendants. (*Id.*) Following the Defendants' Motion to Dismiss, the Court also dismissed the state-law claims in Counts Seven, Eight, and Nine. (Doc. 23.)

Defendants Eisel, Hannaford, and Oliver argue Davis failed to properly exhaust his available administrative remedies as to Counts Three and Five. (Doc. 47.) Counts Three and Five are based on allegations arising from incidents on April 24, 2020, and May 8, 2020. (Doc. 8 at 17–20, 22.) On both dates, Davis was confined at the Arizona State Prison Complex (ASPC)-Alhambra. (Doc. 8 at 17.) Davis alleges that, on each date, Defendants strip searched him and a group of other prisoners with the intention of humiliating, degrading, and sexually abusing him. (*Id.* at 18.) Davis asserts that the April 24, 2020 strip search occurred in view of opposite-gender staff and the May 8, 2020 strip search occurred in view of staff and security cameras. (*Id.* at 17.) For both strip searches, Davis alleges that Defendants forced him "to spread his buttock and anus open and cough multiple times" and "when that did not satisfy [Defendants], [he] was forced to penetrate his anus— opening it wider and coughing harder." (*Id.*) According to Davis, no emergency situation justified either strip search. (*Id.*)

Department Order (DO) 802 sets forth the process that prisoners must follow to exhaust their administrative remedies for non-medical or "standard" grievances. (Docs. 48 ¶ 1; 56-1 ¶ 1.) This process includes three submissions: (1) an Informal Complaint; (2) a Formal Grievance; and (3) a Grievance Appeal. (Docs. 48 ¶¶ 1–11; 56-1 ¶¶ 1–11.) Each step comes with specific deadlines and submission procedures. (Docs. 48 ¶¶ 1–11; 56-1 ¶¶ 1–11.)

The parties dispute whether, after the two incidents mentioned above, Davis properly completed the first and third steps: the Informal Complaint and Grievance Appeal. (Docs. 48 ¶¶ 13–14, 30–31; 56-1 at 14–16, 41–43.) Defendants argue Davis failed to exhaust his administrative remedies in part because there is no record of Davis submitting an Informal Complaint or Grievance Appeal. (Docs. 47 at 6–7; 48 ¶ 14; 61 at 4–5.)

However, it is undisputed that Davis attempted to complete the second step by submitting a May 27, 2020 Formal Grievance for both incidents, which Correctional Officer (CO) Milhoff returned as unprocessed because Davis did not attach a copy of an Informal Complaint. (Docs. 48 ¶ 30; 56-1 at 15.) It is also undisputed that DO 802.08 includes an exception where prisoners have no deadline to begin the grievance process and need not complete the first step of filing an Informal Complaint. (*See* Docs. 48-1 at 15–16; 56 at 8–9; 61 at 3.) This exception applies when a prisoner makes a complaint "that describes activity that may be in violation of the Prison Rape Elimination Act (PREA)." (Doc. 48-1 at 15.)

PREA prohibits "cross-gender strip searches or cross-gender visual body cavity searches . . . except in exigent circumstances or when performed by medical practitioners." *See* 34 U.S.C. § 30307; 28 C.F.R. § 115.15(a). Davis argues, among other things, that the Formal Grievance he attempted to submit on May 27, 2020 fell under DO 802's exception for PREA violations because it alleged that Defendants unnecessarily strip searched him in front of opposite-gender staff. (*See* Docs. 48-1 at 45; 56 at 8–9.) Defendants contend that DO 802's exception does not apply because Davis's grievance does not describe a

PREA violation. (Doc. 61 at 3.) Whether Davis exhausted his administrative remedies thus turns on whether his Formal Complaint implicated PREA.

### B.     Legal Standard

Summary judgment will be granted when the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must not weigh the evidence but determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There is no issue for trial unless there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmovant. *Id.* In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255.

Under the Prison Litigation Reform Act, a prisoner must exhaust available administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, regardless of the type of relief offered through the administrative process. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once that showing is made, the burden shifts to the prisoner, who must show that he exhausted the administrative remedy or that it was effectively unavailable to him. *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.*

//

//

//

### C. Discussion

To exhaust administrative remedies, ADC prisoners must generally submit an Informal Complaint, Formal Grievance, and Grievance Appeal. (Docs. 48 ¶¶ 1–11; 56-1 ¶¶ 1–11.) The Court will address each of Davis's submissions in turn.

First, although the parties dispute whether Davis submitted an Informal Complaint, it is undisputed that prisoners complaining of sexual abuse or conduct "that may be in violation" of PREA need not complete this step. (*See* Docs. 48-1 at 15–16; 56 at 8–9; 61 at 3.) Defendants contend that "[w]hile there is no dispute that strip searches . . . can be very embarrassing and unpleasant, that does not turn them into sexual offenses." (Doc. 61 at 3.) Defendants also argue that Davis failed to specifically claim a PREA violation and allege specific facts that would have alerted staff that his grievance was related to sexual abuse. (*Id.*)

Davis did not need to submit an Informal Complaint to exhaust his administrative remedies because his Formal Grievance alleged conduct that may be in violation of PREA. In his Formal Grievance, Davis alleged that Defendants unnecessarily conducted a group strip search in front of "opposite gender staff . . . in an especially humiliating and degrading manner." (Doc. 48-1 at 45.) These allegations sufficiently state a potential violation of PREA, which prohibits "cross-gender strip searches or cross-gender visual body cavity searches . . . except in exigent circumstances or when performed by medical practitioners." *See* 34 U.S.C. § 30307 (PREA establishing national standards); 28 C.F.R. § 115.15(a) (national standards generally prohibiting cross-gender strip searches); *see also West v. Radtke*, 48 F.4th 836, 850 (7th Cir. 2022) ("[PREA] acknowledge[s] the relevance of sex to prison strip searches."). Under DO 802.08, Davis's allegations sufficiently "describe[] activity that *may* be in violation of [PREA]." (*See* Doc. 48-1 at 15–16 (emphasis added).) DO 802.08, moreover, does not require prisoners to explicitly state they are alleging a PREA violation. (*See id.*)

Next, it is undisputed that Davis submitted a May 27, 2020 Formal Grievance for both the April 24, 2020 and May 8, 2020 incidents. (Docs. 48 ¶ 30; 56-1 at 15.) CO Milhoff,

however, returned it as unprocessed because Davis did not attach a copy of an Informal Complaint. (Docs. 48 ¶ 30; 56-1 at 15.) As discussed above, this was improper because Davis did not need to submit an Informal Complaint. To the extent that Davis failed to properly file a Formal Grievance because CO Milhoff did not process his submission, Davis has met his burden of showing that this administrative remedy was effectively unavailable to him. *See Albino*, 747 F.3d at 1172.

Finally, the parties dispute whether Davis properly submitted a Grievance Appeal. (Docs. 48 ¶ 14; 56 at 8–9; 61 at 4–5.) The fact that Defendants have no record of Davis's Grievance Appeal is unsurprising because ADC staff unprocessed Davis's initial Formal Grievance. As Defendants note, "[Davis's] grievance had been unprocessed, so there was nothing for him to appeal." (Doc. 61 at 4.) Davis has thus shown that the Grievance Appeal process was also effectively unavailable to him. *See Albino*, 747 F.3d at 1172.

Viewing the evidence in the light most favorable to Davis, *see Anderson*, 477 U.S. at 255, the Court concludes that Defendants fail to meet their burden of showing that administrative remedies were available to Davis and that he did not exhaust them. *See Albino*, 747 F.3d at 1172. The Court will therefore deny Defendants Eisel, Hannaford, and Oliver's Motion for Summary Judgment.

## II.     Davis's Motion for Sanctions

Davis argues that Defendants violated Rule 11 of the Federal Rules of Civil Procedure because they filed a "frivolous" Motion for Summary Judgment even though Davis informed them that he exhausted his administrative remedies. (Doc. 71.) Defendants' argument that Davis failed to exhaust his administrative remedies is not frivolous because it has some evidentiary support, including the fact that ADC found no record of Davis's processed grievances. *See* Fed. R. Civ. P. 11. Accordingly, the Court will deny Davis's Motion for Sanctions.

## III.    Conclusion

Accordingly,

**IT IS ORDERED**:

1. Defendants Eisel, Hannaford, and Oliver's Motion for Summary Judgment (Doc. 47) is **denied**.

2. Davis's Motion for Sanctions (Doc. 71) is **denied**.

Dated this 1st day of March, 2023.

_____
Honorable Jennifer G. Zipps
United States District Judge